**In re GRAND JURY SUBPOENA.**

**John DOE, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 1250, Docket 95–6401.**

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1995.

Decided Dec. 8, 1995.

Opinion Issued Dec. 14, 1995.

---

Christine E. Yaris, New York City (Nancy A. Perry, on the brief), for Appellant.

Andrew Weissman, Brooklyn, NY, Assistant United States Attorney for the Eastern District of New York (Zachary W. Carter, United States Attorney for the Eastern District of New York, Peter A. Norling, Assistant United States Attorney, of counsel), for Appellee.

Before: FEINBERG, OAKES and CALABRESI, Circuit Judges.

FEINBERG, Circuit Judge:

John Doe appeals from an order of civil contempt dated November 28, 1995, entered in the United States District Court for the Eastern District of New York, Allyne R. Ross, J. Doe refused to testify in front of a grand jury unless: (1) he was permitted to write down every question asked of him; (2) he was given a transcript of his prior testimony before a different grand jury; and (3) he was given notes that may have been taken by federal agents when they interviewed him. The district court held that on the record before it, including material submitted to it in camera, Doe did not have a right to the materials he had requested. Upon determining that Doe had refused to answer questions

and would continue to do so, the judge held Doe in civil contempt and ordered him confined for the life of the grand jury, or until he purged himself of the contempt, whichever was sooner. We affirm the order of the district court.

## I. Background

In March 1992, Doe was granted immunity and testified before a grand jury. In November 1995, Doe was required to appear before another grand jury investigating the same activity. In the interim between these appearances, Doe was interviewed a number of times by federal agents.

On November 14, 1995, Judge Sterling Johnson Jr. of the Eastern District ruled that Doe could not bring notes into the grand jury room, nor could he take notes during the grand jury proceeding and leave the grand jury room with the notes. Thereafter, Doe refused to answer questions, relying on his fifth amendment privilege. Doe was then again granted immunity, but on November 21, 1995, he again refused to answer questions based on: (1) his purported fifth amendment privilege; (2) his need to take notes in order to be able to consult with his attorney; (3) his right to obtain the grand jury transcript of his 1992 appearance; and (4) his need for notes taken by federal agents. Doe did not make a formal motion under Rule 6 of the Federal Rules of Criminal Procedure for discovery of grand jury materials.

A compromise was then reached in which the government agreed to limit questioning initially to the time period after May 1995, the last time Doe spoke with any government agents, so as to alleviate his concern that his testimony now might be inconsistent with his earlier statements. But we have found nothing in the record to indicate that the government agreed not to ask, at a later date, questions relating to the period before May 1995. The government also agreed to let Doe take notes in the grand jury to the extent necessary to consult with counsel, who was right outside the grand jury room.

Doe next appeared in front of the grand jury on November 22. Despite being told that he could only write down questions about which he sought legal advice, Doe wrote down each question, even when he did not consult with his attorney. On November 28, Doe returned to the grand jury and, when the government asked questions regarding events prior to May 1995, Doe again refused to answer questions.

The parties and the jury foreperson then appeared before Judge Ross. Judge Ross determined that Doe had refused to answer questions and would continue to refuse. On the record before her, including material submitted in camera by the government, the judge then held Doe in civil contempt, finding that he had not shown a particularized need either for the grand jury transcript or the notes made by federal agents. Judge Ross held in the alternative that even if the court applied a presumption that Doe was entitled to disclosure of his prior testimony, such disclosure was not warranted in this case. The court ordered Doe confined for the life of the grand jury, or until he purged himself of the contempt, whichever was sooner, but stayed the contempt order for one day.

Doe promptly appealed and sought a further stay. On November 29, this court granted an emergency stay until Doe's motion for a stay could be heard by a motions panel of the court. That panel heard the motion on December 5, and continued the stay. In light of the government's representations regarding urgency, the panel also expedited Doe's appeal from the contempt order to December 8. This panel heard argument on that day. Later that day, we affirmed in a brief order stating that an opinion would follow. This opinion carries out that commitment.

## II. Discussion

■ In this court Doe argues that: (1) he has a right to the transcript of his testimony before the 1992 grand jury and the notes, if any, taken by federal agents; and (2) he was denied due process at his contempt hearing in the district court. We review for abuse of discretion the district court's decision not to release the material sought. *Pittsburgh Plate Glass Co. v. United States,* 360 U.S.

395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959).

### A. Disclosure of Grand Jury Materials

The Supreme Court has consistently recognized that the proper functioning of the grand jury system depends upon the secrecy of grand jury proceedings. Several distinct interests are served by this secrecy:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 219, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156 (1979).

■ Rule 6(e) of the Federal Rules of Criminal Procedure governs disclosure of grand jury materials. The Rule provides that grand jury transcripts "shall remain in the custody or control of the attorney for the government unless otherwise ordered by the court in a particular case." Fed.R.Crim.P. 6(e)(1).[1] The court is authorized by Rule 6(e)(3)(C) to make disclosures otherwise prohibited by the Rule. The Supreme Court has held that this subsection requires "a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *United States v. Sells Eng'g, Inc.,* 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983); see *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); see also *Application of Executive Securities Corp.,* 702 F.2d 406, 408–09 (2d Cir.), cert. denied, 464 U.S. 818, 104 S.Ct. 78, 78 L.Ed.2d 89 (1983). Parties seeking disclosure have the burden of showing that the requested material "is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674.

Most of the cases involving a request for a grand jury transcript arise in the context of third-party attempts to obtain a copy of a witness' grand jury testimony. See, e.g., *Illinois v. Abbott & Associates, Inc.,* 460 U.S. 557, 103 S.Ct. 1356, 75 L.Ed.2d 281 (1983) (state attorney general); *Douglas Oil,* 441 U.S. 211, 99 S.Ct. 1667 (civil litigant); *Smith v. United States,* 423 U.S. 1303, 96 S.Ct. 2, 46 L.Ed.2d 9 (1975) (state prosecutor). Opinions dealing with a request by a grand jury witness (who is not a defendant)[2] for his own testimony are less common, and the Supreme Court has not as yet ruled on the standard to be applied. But we believe that it can fairly be said that a majority of appellate opinions dealing with the issue have held that even when a witness seeks his own prior grand jury testimony, the burden of showing a particularized need still applies. See *Davis v. United States,* 641 A.2d 484, 490–91 (D.C.App.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1384, 131 L.Ed.2d 237 (1995); *In re*

---

1. Rule 6(e)(1) was amended in 1979 to require, rather than merely permit, the recording of all grand jury proceedings, except when the grand jury is deliberating or voting. The Advisory Committee Notes, citing the dissenting opinion of Judge Oakes in *United States v. Cramer,* 447 F.2d 210 (2d Cir.1971), state that the benefits to be derived from this procedure include ensuring that the defendant may impeach a prosecution witness on the basis of his prior inconsistent statements before the grand jury, ensuring that the testimony received by the grand jury is trustworthy and that the witness does not commit perjury, restraining prosecutorial abuses before the grand jury and supporting the case made by the prosecution at trial. The Advisory Committee goes on to emphasize that "the proposed changes in rule 6(e) deal only with the recording requirement, and in no way expand the circumstances in which disclosure of the grand jury proceedings is permitted or required."

2. Under Fed.R.Crim.P. 16(a)(1)(A), the government must disclose "recorded testimony of the defendant before a grand jury which relates to the offense charged."

*Bianchi*, 542 F.2d 98, 100 (1st Cir.1976); *Bast v. United States*, 542 F.2d 893, 895–96 (4th Cir.1976); *In re Bottari*, 453 F.2d 370, 371–72 (1st Cir.1972); cf. *Executive Securities Corp.*, 702 F.2d at 408–09 (particularized need must be shown by third party seeking to discover transcript of grand jury witness, even where third party has witness' consent). See also *United States v. Lopez*, 779 F.Supp. 13, 16 (S.D.N.Y.1991).

Doe suggests that a different standard should apply; i.e., a grand jury witness has a presumptive right to his own testimony, and the government can overcome this presumption only by a clear showing that other interests outweigh his right to his testimony. In support of this proposition, Doe cites two circuit court opinions, each of which has unusual facts: *In re Sealed Motion*, 880 F.2d 1367, 1371 (D.C.Cir.1989) and *Bursey v. United States*, 466 F.2d 1059, 1079–81 (9th Cir.1972). In the former, the D.C. Circuit held that under the Independent Counsel Act, 28 U.S.C. § 591, et seq., a high-level government official who, although unindicted, would be named in the Independent Counsel's final report, had a statutory right to comment on the report, and thus had the right to review his grand jury testimony. In *Bursey*, members of the Black Panther Party were repeatedly called before the same grand jury and asked questions that implicated grave First Amendment issues. The Ninth Circuit held that due process required that before these witnesses could be compelled to answer repetitive questions, they had a right to see their prior testimony. Doe also relies on *In re Heimerle*, 788 F.Supp. 700 (E.D.N.Y.1992), which flatly supports his claim that he has "a presumptive right" to obtain a transcript of his own testimony. *Id.* at 704.

■ We need not decide between these standards because we believe that even under the "presumptive right" standard, the district court did not abuse its discretion in ruling that Doe was not entitled to the transcript of his 1992 testimony. The government represents that the grand jury investigation here is very much ongoing, thereby heightening the government's interest in secrecy. *Douglas Oil*, 441 U.S. at 222, 99 S.Ct.

at 1674; *United States v. Moten*, 582 F.2d 654, 662–63 (2d Cir.1978); *In re Bonanno*, 344 F.2d 830, 834 (2d Cir.1965). While the considerations justifying secrecy have less force when a witness seeks his own testimony, these considerations may still have considerable force, depending on the circumstances. As Justice Brennan has noted:

> [A] witness is not entitled to a copy of his grand jury testimony on demand, even though he obviously was present in the grand jury room during the receipt of evidence, *since a rule of automatic access would expose grand jury witnesses to potential intimidation* by making it possible for those with power over the witness to monitor his or her testimony.

*United States v. John Doe, Inc. I*, 481 U.S. 102, 125, 107 S.Ct. 1656, 1669, 95 L.Ed.2d 94 (1987) (Brennan, J., dissenting) (emphasis in original) (internal citations omitted); see also *In re Bottari*, 453 F.2d at 372 ("it would be naive on the part of the court to think that appellant seeks these answers for his own protection as distinguished from attempted discovery by other persons interested in the grand jury proceedings").

Against the showing of the government's concern for secrecy, based in part on the in camera material, Doe claims he needs the transcript of his prior testimony because he fears a perjury prosecution if his present statements differ from those he gave to the grand jury in 1992. To the extent Doe claims he is being harassed into committing perjury by the prosecutor, we find no evidence in the record of such harassment. Cf. *Bursey*, 466 F.2d at 1079–81 (emphasizing "potential for abuse" when witness is "compelled to answer repetitive questions"). Doe also claims that the length of time since his prior grand jury appearance and the natural tendency to confuse hearsay with one's own recollection increase his chances of being prosecuted for perjury. We understand that the fear of making inconsistent statements is a very real one for anyone who has to testify, although we note that Judge Johnson characterized Doe as more sophisticated than the average witness. But it must be remembered that this fear is diminished by the fact that in any perjury prosecution based on

Doe's testimony now, the government would have to prove beyond a reasonable doubt that he knowingly gave false testimony. *United States v. Lighte*, 782 F.2d 367, 372 (2d Cir. 1986). The almost four-year lapse between Doe's appearances will make it more difficult to prove such perjury, because recollection of past events may honestly have dimmed. Moreover, the grant of immunity precludes the use of his present immunized testimony in a prosecution for past perjury. *United States v. DeSalvo*, 26 F.3d 1216, 1223 (2d Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 192, 130 L.Ed.2d 124 (1994); *Matter of Grand Jury Proceedings of August 1984*, 757 F.2d 108, 113 (7th Cir.1984), cert. denied, 471 U.S. 1018, 105 S.Ct. 2025, 85 L.Ed.2d 306 (1985). Finally, Doe is not entitled to any protection from a perjury prosecution if he lies in his testimony now. *United States v. Papadakis*, 802 F.2d 618, 621 (2d Cir.1986), cert. denied, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 159 (1987); *In re Bianchi*, 542 F.2d at 100.

On balance, on the record before us, the government's need to preserve the secrecy of an ongoing grand jury investigation overcomes a presumption that Doe is entitled to his own testimony, particularly when careful attention is paid to Doe's reasons for needing the transcript. We hold that it was not an abuse of discretion for the district court to deny Doe the transcript of his prior grand jury testimony.[3]

■ With regard to the notes, if any, taken by federal agents in prior interviews, this issue seems to have appeared only rarely in the reported cases. It is true that in the context of a trial, a defendant is entitled to obtain his prior statements to government agents under Fed.R.Crim.P. 16. But Doe is not a defendant here. In *Matter of Grand Jury Proceedings of August, 1984*, 757 F.2d at 113, a grand jury witness, like Doe here, apparently argued that the failure of the government to supply him with "reports of his prior statements to government investigators" justified his refusal to answer ques-

tions before the grand jury. The Seventh Circuit rejected this argument, as did the First Circuit in *Bottari*, 453 F.2d at 371. Doe cites no case in direct support of his claim, and makes the same arguments to prove his entitlement to these notes as he does with respect to the grand jury testimony. On balance, we find the arguments no more persuasive.

■ We also find meritless Doe's claim that he needs to take notes in the grand jury room. In the first instance, the government agreed to let Doe take notes to the extent he wished to consult with counsel. Additionally, both Judge Ross and Judge Johnson found that this was unnecessary given that Doe was capable of remembering each question so that he could repeat it to his lawyer, who was present outside the grand jury room during each of Doe's appearances.

## B. Due Process

Doe also argues to us, as he did in the district court, that he was denied due process. He claims that he did not receive reasonable notice of the contempt motion; the motion was not made on formal papers; the district court did not read the papers he submitted; the transcripts of the November 21 and 28 grand jury proceedings were not made a part of the non-ex parte record; and he did not have access to the government's in camera submission to the district court.

■ The first three of these objections are clearly without substance. Doe knew at least a week before the government brought its contempt motion that it intended to do so. He also knew what the basis for it would be. With regard to the November 21 and 28 transcripts, at the hearing before the judge in Doe's presence, the prosecutor and the jury foreperson described the particular questions Doe refused to answer, and Doe himself knew what the questions were. He does not deny that he refused to answer them, and he cannot deny that he was present when he refused. *In re Bianchi*, 542 F.2d at 101. The failure to provide Doe with

---

3. Doe's counsel states that a protective order could be fashioned to allow Doe to have his prior grand jury testimony while preserving the government's interest in the secrecy of its ongoing investigation. Without in any way questioning the good faith of Doe's competent counsel, we still cannot say it was an abuse of discretion for the trial court to refuse to disclose the testimony.

the ex parte material submitted by the government, and reviewed in camera by the district court, raises a more substantial issue. However, while this procedure does not occur frequently, it is not forbidden when justified. *Stoddard v. United States,* 710 F.2d 21, 23 (2d Cir.1983); *In re John Doe Corp.,* 675 F.2d 482, 489–91 (2d Cir.1982). We have examined the record before us, including the in camera material submitted to the district court, and have no doubt that the procedure was justified.

We have considered all of Doe's arguments and find them to be without merit. To summarize, we hold that: (1) Doe did not have a right to his prior grand jury transcripts or to the notes, if any, taken by federal agents as a condition of testifying before the grand jury; and (2) Doe was not denied due process at his contempt hearing. We affirm the order of the district court.